# AMERICAN SURETY CO. OF NEW YORK v. CABELL.

No. 5958.  Opinion Filed July 11, 1916.

(159 Pac. 352.)

1. **PRINCIPAL AND SURETY—Requisites of Contract—Considera-tion.** Forbearance by a surety company from withdrawing from the bond of· an executor, by giving notice, etc., pursuant to the provisions of a statute, is sufficient consideration to sup-port a contract to indemnify the surety company against loss upon the executor's bond.

2. **INSURANCE—Premiums—Surety Companies—Death of Prin-cipal.** Upon the death of the principal, an executor's bond, fur-nished by a surety company, can earn no further premiums.

3. **PRINCIPAL AND SURETY—Construction of Contract—Extent of Liability—Attorney's Fees.** An executor in his written ap-plication to a surety company for a bond conditioned for the faithful performance of his duty agreed: "That the indemnitor will perform all conditions of said bond and any and all re-newals and extensions thereof on the part of indemnitor to be performed and will at all times indemnify and save the surety harmless from and against every claim, demand, liability, cost, charge, counsel fee (including fee of special counsel whenever by the surety deemed necessary), expense, suit, order, judgment and adjudication whatsoever, and will place the surety in funds to meet every such claim, demand, liability, cost, charge, counsel fee, expense, suit, order, judgment, adjudication against it by reason of such suretyship and any and all renewals and extensions thereof, and before it shall be required to pay the same." **Held,** that such covenant imposes no duty upon the indemnitor to pay for the services of an attorney employed by the surety company to procure a contract for indemnity from indemnitor, such indemnity not having been provided for in either the original application or the bond. **Held,** further, that in the circumstances disclosed by the record the surety company was not entitled to recover an attorney's fee paid for services rendered in an action commenced by a legatee against the ex-ecutor, but not upon his bond, wherein the surety company was made a party.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*W. R. Taylor, Judge.*

Action by Ellen D. Cabell against the American Surety Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

*Wilson, Tomerlin & Buckholts,* for plaintiff in error.

*J. V. Cabell,* for defendant in error.

KANE, C. J. This was an action commenced by the defendant in error, plainiff below, against plaintiff in error, defendant below, for the purpose of recovering an unexpended balance of a certain sum deposited for the purpose of indemnifying defendant against any loss which it might suffer by reason of its suretyship upon the bond of B. F. Cabell, the husband of the plaintiff, who was nominated executor of the last will and testament of J. M. Cabell, deceased. Hereafter the parties will be called "plaintiff" and "defendant," respectively, as they were designated in the court below.

The defendant in its answer admitted the contract of indemnity, and that there was an unexpended balance of the indemnity fund still due the plaintiff, as alleged in her petition, and further alleged, by way of cross-petition, that the executor, B. F. Cabell, defaulted in the payment of certain of the premiums due upon said bond, for which it claimed credit, and that by reason of a certain action having been commenced against said executor in the circuit court of Jefferson county, Ky., by one of the devisees under the will of J. M. Cabell, deceased, said defendant, in order to defend said suit and protect itself from liability by reason of being surety upon the bond of B. F. Cabell, executor, was put to an expense of $1,014.75, which said amount said B. F. Cabell was obligated to pay to this defendant; the items constituting said sum being as follows: Attorney's fees, $1,000; expenses by way of telegrams, traveling, etc., $14.75.

Thereafter the defendant filed an amended and supplemental answer, to the effect that after the filing of said answer this defendant had delivered to the plaintiff, and the plaintiff had received from the defendant, the certificate of deposit referred to on page 12 of said original answer, for the sum of $2,486.86, issued by said Fidelity Trust Company of Louisville, Ky., and duly indorsed, which sum constitutes the balance due said plaintiff by virtue of said contract of indemnity.

The reply consisted of a general denial of every material allegation contained in the answer and cross-petition, "except such as hereinafter are specifically admitted," and numerous specific admissions and denials which, were followed by allegations of affirmative matter, which it is not necessary to notice in detail.

Upon trial to the court, the court made very full findings of fact and conclusions of law, upon which it rendered judgment in favor of plaintiff for interest on the sum of $2,486.86, from the 28th day of November, 1911, until the date of the filing of the answer of defendant, wherein said certificate of deposit was tendered to the plaintiff, with interest, and in favor of the defendant for the amount of the premium due on December 20, 1908, amounting to $42.15, and credited same on judgment for plaintiff, leaving a net balance for plaintiff of $10.69. The defendant was denied any judgment on its cross-petition, whereupon it commenced this proceeding in error for the purpose of reviewing the action of the trial court in denying relief upon its cross-petition, and the plaintiff below, defendant in error here, filed a cross-petition in error for the purpose of reviewing the action of the trial court in refusing to grant the full relief prayed for in her petition.

The facts necessary to review the questions of law presented may be stated briefly as follows: In March, 1907, J. M. Cabell died in Louisville, Ky., leaving a will nominating his brother, B. F. Cabell, executor without bond. The heirs consisted of Mrs. E. C. Brownfield and B. F. Cabell, of Bowling Green, Ky., and Mrs. Martha Chelf of Harrodsburg, Ky. In December, 1907, Mrs. Brownfield filed a motion in the probate court of Jefferson county, Ky., requiring the executor to file an inventory and execute bond for the faithful performance of his duties. On the 20th day of the same month the executor executed a bond, with the American Surety Company of New York, the defendant herein, as surety. In October, 1908, Mrs. Brownfield filed suit in the circuit court of Jefferson county against the executor for final settlement and distribution of the estate, making Mrs. Chelf, the other heir, the American Surety Company, Miss Bettie Y. Ray, and Mrs. Nannie B. Reed, defendants. The petition alleged that the executor had mismanaged and wasted said estate, and that a note of $5,492.13, payable to Bettie Y. Ray, and one to Nannie B. Reed of $1,784.80, signed by deceased, were not legitimate obligations against the estate and should not be paid. The court referred the matter to a commissioner, who filed his report in October, 1910, wherein said executor was exonerated from all charges alleged against him by Mrs. Brownfield, sustaining the validity of the Ray and Reed notes, and discharging both the executor and the surety company. On the 16th day of December, 1910, the court adopted the report of the commissioner *in toto*, rendered judgment thereon, and spread the same upon the records of said court. Immediately upon the commencement of this action, to wit, on the 23d day of March, 1909, the American Surety

Company asked the executor to indemnify it against any possible liability or loss on said bond, and in pursuance of said request, B. F. Cabell and his wife, Ellen D. Cabell, the plaintiff herein, executed an assignment of certain funds payable to them on July 20, 1909, from the State of Kentucky in the sum of $20,000 cash.   Mrs. Cabell's interest in this sum was $15,000 and B. F. Cabell's $5,000.   On the 19th  day of September, 1909, B. F. Cabell died, and Ellen D. Cabell was appointed ad-administratrix of his estate, giving bond in the sum of $3,000 as such administratrix with the Title Guaranty Company of Scranton, Pa., as surety.   About the same time she was appointed administratrix of the estate of J. M. Cabell, deceased, giving bond with the Title Guaranty Company as surety.   The State of Kentucky paid the American National Bank of Bowling Green the consideration expressed in the contract of indemnity, the proceeds of which were assigned  by them to the American Surety Company, but the bank refused to pay the surety company anything under its assignment.   In December, 1909, the bank delivered to Ellen D. Cabell two Kentucky state warrants for $5,000 each, bearing dates of September 1, 1909, and December 1, 1909.   Mrs. Cabell forwarded same to American Surety Company, Louisville, where, when paid, $5,500 was to be held by the American Surety Company, as security against possible loss until final judgment of the Jefferson county circuit court in the Brownfield suit.   In December, 1909, these warrants were paid, and January, 1910, $4,500 was returned to Mrs. Cabell. In December, 1910, upon rendition of final judgment of the circuit court of Jefferson county exonerating and discharging the executor and the surety company from liability, demand was then made for the return to Mrs.

Cabell of the $5,500, and by it refused. On June 6, 1911, the surety company returned to Mrs. Cabell $2,000, retaining the remainder for which this suit was brought in Oklahoma county, February, 1912. The action was for the recovery of $2,486.86, and damages for the conversion of these moneys from December 15, 1909, at 6 per cent. per annum, expenses and attorney's fees.

The theory of the plaintiff was that the surety company, having executed the executor's bond, as surety, for the yearly premium, it was bound by its contract and could not withdraw, and therefore the assignment of the fund of B. F. Cabell and Ellen D. Cabell for the purpose of indemnifying it against any possible loss by reason of its being surety upon the bond of B. F. Cabell was without consideration and void. The theory of counsel on this point is disclosed by the following excerpt from his brief:

"It (the surety company) could not withdraw from the bond, although it set out a statute of Kentucky, and claims it could have invoked same, for a release from the bond. We insist the statute was passed exclusively for private sureties and not for insurance companies, as surety companies are classed both in Kentucky and Oklahoma. The higher court of Kentucky does not appear to have construed the statute involved with this point in question, but New York, with a similar statute, has."

Then follows a quotation from the case of *Thurber's Estate, In re,* 43 App. Div. 528, 60 N. Y. Supp. 198, which seems to support the contention of counsel that such statutes are applicable to private sureties only. However, in their reply brief counsel for defendant call attention to the opinion of the Court of Appeals of the State of New York in the same case, reported in 162 N. Y. 244, 56 N. E. 631, which reverses the lower court and holds such statutes

are applicable to both classes of sureties. Assuming, as counsel seem to have done, that if such statutes are applicable to surety companies, then the forbearance of the company would constitute a sufficient consideration for the contract of indemnity entered into between B. F. Cabell, Mrs. Cabell, and the surety company, but there is slight room for controversy between the parties as to the issues involved in the petition itself, for the reason that the proper disbursement of the indemnity fund, according to the terms of the contract, except as to the specific amount stated in the petition of the plaintiff, is not questioned. The indemnity contract contained a defeasance clause, which reads as follows:

"It is agreed that the assignment asked by the American Surety Company from B. F. Cabell is merely as collateral security to protect said corporation from liability as such surety, the money that may be collected on said assignment shall be used to defray and discharge the obligations of said estate and of said executor to said estate, and whatever remains after the discharge of said executor, shall be returned to said Cabell or his wife as said Cabell and his wife may direct."

The court below found the 28th day of November, 1911, the date the last heir waived her right to appeal from the judgment rendered by the Jefferson county circuit court, as the date when the balance of the fund should have been turned back to the Cabells, and allowed the plaintiff 6 per cent. from that date until the 15th day of July, 1912, the date when the defendant filed its answer. We think there was no error in this. The court below cut off interest at 6 per cent. on the date of the filing of the answer, upon the theory that at that time the defendant made a tender of the balance due. There is some contention on the part of the plaintiff that, even admitting

the validity of the contract of indemnity, and the correctness of the findings of the court as to the time the money should have been turned over to the Cabells under the defeasance clause, still the balance remaining unpaid should draw interest at 6 per cent. until the following October, the date the balance was actually received by the plaintiff. Neither the answer of the defendant, nor the evidence, if there was any, tending to show a tender, is set out by either side in their brief, as required by rule 25 of this court (38 Okla. x; 137 Pac. xi), and, in the absence of any showing on that point, this court will presume that the trial court's findings as to the time interest ceased are supported by the pleadings or the evidence.

What we have heretofore said sufficiently covers the assignments of error predicated upon the cross-appeal of the plaintiff.

We will now examine briefly the assignments of error predicated upon the petition in error of the defendant: The plaintiff admits liability for the premium due on the executor's bond for the years beginning December 20, 1908, and December 20, 1909, but as to the remaining premiums claimed by the surety company contends that, as the obligation of the bond was a personal one, upon the death of the executor in September, 1909, liability for further premiums ceased. We think this position is well taken. As no further defaults of the terms of the bond could occur after the death of the principal, it would seem to follow that no further premiums could be earned by the surety company.

On the question of the allowance of an attorney's fee, counsel for the surety company contend that by the express terms of the application for a suretyship bond, signed by B. F. Cabell, it was left to the discretion of the

surety company to employ attorneys if it saw fit to do so; that unless the plaintiff showed that the defendant acted in bad faith, or that its acts would amount to fraud upon the plaintiff, the fees so paid to attorneys would constitute a proper charge against the principal. The clause in the application for a bond, upon which the defendant relies to support its contention, reads as follows:

"That the indemnitor will perform all conditions of said bond and any and all renewals and extensions thereof on the part of indemnitor to be performed and will at all times indemnify and save the surety harmless from and against every claim, demand, liability, cost, charge, counsel fee (including fee of special counsel whenever by the surety deemed necessary), expense, suit, order, judgment and adjudication whatsoever, and will place the surety in funds to meet every such claim, demand, liability, cost, charge, counsel fee, expense, suit, order, judgment, adjudication against it by reason of such suretyship and any and all renewals and extensions thereof, and before it shall be required to pay same."

The services rendered by counsel, for which compensation is claimed, consist of two separate and distinct items, which are stated by counsel for defendant in their reply brief as follows:

"The defendant was compelled to employ an attorney, and to go to expense not only to defend the suit that the act of the principal had brought about, but to procure the funds from the principal so that it might be protected against loss. The record shows that it was necessary to threaten Mr. Cabell with legal proceedings before he would deliver the funds to protect the surety. It was necessary to enter into long and tedious negotiations with the principal, and to make numerous contracts and agreements with reference to the funds and the payment of interest to the plaintiff and his successor in interest, the plaintiff. That during these negotiations, the prin-

cipal was represented by counsel antagonistic to the surety's interest, and every effort was made to reduce the amount to be deposited."

From this it appears that the principal service rendered by counsel was to procure the funds from the principal, so that the surety company might be protected against loss.

In our judgment, the principal and surety company did not contemplate, and therefore did not provide in their contract against, the consequences of a controversy of this kind, arising between the surety company and the indemnitor. As we understand the facts touching this specific point, the surety company, upon action being commenced against the executor, became alarmed and demanded indemnity from the principal, asserting that it had a right under a Kentucky statute to withdraw from the bond, and that it would do so, unless the indemnity was given. No injury had resulted to the company by reason of its having signed the bond, nor was there any consequent breach of its conditions by the executor. The surety company simply insisted upon the execution of a separate contract of indemnity to which it was not entitled by any of the conditions of its previous undertaking, which was supported by a new consideration, to wit, forbearance from withdrawing from the executor's bond which, under the Kentucky statute, it had a right to do upon giving notice, etc. It is quite clear to us that the clause of the application heretofore quoted imposes no liability upon the plaintiff to pay for the services of an attorney employed by the surety company in this behalf. On this point we think the case at bar is more nearly analogous to *Fidelity & Deposit Company of Maryland v. Crouse*, 86 N. J. Law, 55, 90 Atl. 1026, and *Waln v. Cuth-*

*bert,* 54 N. J. Law, 1, 22 Atl. 1007, than to *United States Fidelity & Guaranty Co. v. Hittle,* 121 Iowa, 352, 96 N. W. 782, and *Ellis v. Norman* (Ky.) 44 S. W. 429, relied upon by counsel for the surety company.

We do not know the precise ground upon which the court below denied the right of recovery of attorney's fees, but if it reached the conclusion reached by this court, as it probably did, that the surety company was not by the terms of its contract with B. F. Cabell entitled to recover an attorney's fee paid for services rendered in procuring funds from the principal to indemnify the surety company against loss, in view of its findings that, "other counsel were retained and paid by the said B. F. Cabell and by the plaintiff herein in said settlement suit, * * * and that said attorneys were able and competent attorneys and counselors in said suit and thoroughly capable of handling his interest in all respects," it would have been justified in finding that the employment of special counsel by the surety company at the expense of the principal in the Brownfield Case, which was not an action on the executor's bond, was not in good faith. As was said in a somewhat similar case, *American Surety Company v. Vinsonhaler,* 92 Neb. 1, 137 N. W. 848, in distinguishing *United States Fidelity & Guaranty Co. v. Hittle, supra:*

"Without determining whether we would be willing to follow that court to the full extent of its opinion in that case, we are satisfied that the language there used should not be applied in a case of this kind. In that case, it does not appear that the principal upon the bond agreed to place funds in the hands of the surety sufficient to protect it against any claim or demand, and we cannot believe that that court would hold that in such case, if the defendant complied with that agreement, and while there

were funds in the hands of the surety, furnishing protection against the claim that was being urged against the principal, and, while the principal was properly and sufficiently defending the action, the surety could, without the knowledge or consent of the principal, incur additional and apparently unnecessary expense, and recover the same from the principal. The case at bar is more nearly analogous to *American Surety Co. v. Lehr* (Tex. Civ. App.) 93 S. W. 681."

For the reason stated, the judgment of the court below is affirmed; the costs of this appeal to be taxed against the party incurring same.

All the Justices concur.